[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 5, 2004
THOMAS K. KAHN
CLERK

_____

No. 02-17033

_____

D. C. Docket Nos. 02-00253-CV-3-RV-MD
& 98-00063-CR-3-R

HOLLY W. BUTCHER,
JOHN T. RENICK,

Petitioners-Appellees,

versus

UNITED STATES OF AMERICA,

Respondent-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(May 5, 2004)**

Before CARNES and WILSON, Circuit Judges, and JORDAN[*], District Judge.

CARNES, Circuit Judge:

_____

[*] Honorable Adalberto Jordan, United States District Judge for the Southern District of
Florida, sitting by designation.

Six years ago, Holly W. Butcher and John T. Renick were convicted in federal district court of multiple counts of fraud and money laundering. This is the third time their case has been before us since then. It is here this time on the government's appeal of the district court's judgment vacating their convictions and sentences under 28 U.S.C. § 2255 on grounds of ineffective assistance of counsel. We reverse.

## I.

We will recite only those facts necessary for an understanding of this opinion. A more extensive discussion of the facts may be found in the opinions we issued in our two prior decisions in this case. The first of those two opinions was unpublished, United States v. Butcher, No. 98-3806 (11th Cir. Nov. 24, 1999), but we reproduced that opinion as an appendix to the published opinion we issued in the next appeal in the case, United States v. Renick, 273 F.3d 1009 (11th Cir. 2001). (We will be citing that first opinion as Butcher, 273 F.3d at __ (appendix)).

Butcher was the CEO and administrator of the Rivendell hospitals in Ft. Walton Beach and Panama City, Florida. Renick, a psychiatrist, was employed by Rivendell as a physician and for a time as Medical Director. Renick was excluded from billing both Medicare and the Civilian Health and Medical Program of the

2

Uniformed Services (CHAMPUS) due to a prior conviction for mail fraud. Both Butcher and Renick were aware of the terms of Renick's exclusion.

In July 1998, Butcher and Renick (whom we will be calling "petitioners") were charged in a 38-count indictment with crimes including conspiracy to commit money laundering and conspiracy to defraud the United States by submitting false claims to Medicare and CHAMPUS. At trial, when the government closed its case both petitioners moved for judgment of acquittal on all counts pursuant to Fed. R. Crim. P. 29. The district court expressed its belief that the government's case was weak, but reserved ruling on the motions until after the verdict. The petitioners, in turn, rested without presenting evidence.

The jury returned verdicts against the petitioners on all 38 counts of the indictment. Thereafter, the district court issued an order granting the reserved motions for judgment of acquittal on all 38 counts, expressing its view that the evidence was insufficient to support a finding that petitioners possessed the requisite intent to commit each offense for which they had been charged and convicted.

On appeal, we reversed after concluding that the jury's verdict was supported by sufficient evidence. We remanded with instructions for the district

3

court to reinstate the jury's verdicts of guilty as to both defendants and on all counts.  Butcher, 273 F.3d at 1035 (appendix).

After remand but before sentencing, petitioners filed motions for a new trial pursuant to Fed. R. Crim. P. 33, as well as alternative motions to vacate pursuant to 28 U.S.C. § 2255.  The district court conducted a hearing on those motions for new trial and, over the government's objection, allowed the defendants to supplement the record in support of their motions with affidavits of witnesses who were not called at trial.  At the conclusion of the hearing the district court stated that the motions would be granted.

After reflection, however, the court issued a written order of denial, concluding that the motions for new trial were untimely.  Rule 33 specifies that a motion for new trial based on grounds other than newly discovered evidence "must be filed within 7 days after the verdict or finding of guilty, or within such further time as the court sets during the 7-day period," Fed. R. Crim. P. 33(b)(2), and petitioners' motions had not met that deadline.  In its order the district court explained that it would have granted the motions for new trial but for the fact that their untimeliness deprived it of jurisdiction to do so.

At the same time the district court denied the motions for a new trial, it also denied the petitioners' alternative motions under § 2255 to vacate their convictions

4

and sentences. It did so because the petitioners had not yet been sentenced and were not in custody and therefore did not meet the "custody under sentence" requirement of § 2255.

The petitioners were sentenced on June 22, 2000 and were released pending appeal. During their direct appeal they challenged their convictions and sentences on a number of grounds that are not relevant to our present discussion. Renick, 273 F.3d at 1011. The government cross-appealed, asserting that the district court erred in calculating the petitioners' sentences. We affirmed the petitioners' convictions but remanded to correct a sentencing error. Id. at 1028. The petitioners were resentenced. Thereafter, they once again moved to vacate their sentences pursuant to § 2255, this time on the basis that their trial counsel had provided ineffective assistance by failing to file their motions for a new trial in a timely manner. A magistrate judge, to whom the district court referred the § 2255 motions, issued a report and recommendation advising that the motions be granted. Over the government's objection, the district court issued an order adopting the report and recommendation in its entirety and granting petitioners' § 2255 motions. It entered formal judgment in favor of the petitioners, setting aside their convictions and sentences. The government appealed.[1]

---

[1] The petitioners contend that we lack jurisdiction because the government's notice of appeal was filed on the sixtieth day after entry of the order being appealed. That contention

## II.

We review <u>de novo</u> the district court's judgment granting relief on a petitioner's claim of ineffective assistance of counsel. <u>Chandler v. United States</u>, 218 F.3d 1305, 1312 (11th Cir. 2000) (en banc).

To succeed on a claim of ineffective assistance, a habeas petitioner must satisfy both prongs of the test set out by the Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052 (1984). The performance prong requires a petitioner to establish that counsel performed outside the wide range of reasonable professional assistance and made errors so serious that he failed to function as the kind of counsel guaranteed by the Sixth Amendment. <u>Id.</u> at 687-89, 104 S. Ct. at 2064-65. The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense. <u>Id.</u> at 687, 104 S. Ct. at 2064.

---

assumes that this appeal is governed by Fed. R. App. P. 4(b)(1)(B), which requires that any notice of appeal by the government be filed within 30 days after judgment in a criminal case. Instead, appeals in § 2255 proceedings are treated as civil in nature and are governed by Fed. R. App. P. 4(a)(1)(B), which allows 60 days for filing the notice of appeal where the government is a party. <u>See</u> <u>United States v. Brown</u>, 117 F.3d 471, 474 (11th Cir. 1997) (holding that the "appeal was timely filed, because Federal Rule of Appellate Procedure 4(a) provides inmates with sixty days to appeal the denial of a § 2255 motion"); <u>United States v. Phillips</u>, 225 F.3d 1198, 1200 (11th Cir. 2000) (observing that Fed. R. App. P. 4(a)(1)(B) would apply to allow the government 60 days to appeal from the grant of a § 2255 motion) (dicta); <u>see also</u> <u>United States v. Dunham Concrete Prods., Inc.</u>, 501 F.2d 80, 81 (5th Cir. 1974) ("This Circuit has long taken the view that § 2255 proceedings are, like habeas matters, civil actions mainly standing on their own bottoms . . . ."). We have jurisdiction because the notice of appeal was timely filed, although just barely.

Unless a petitioner satisfies the showings required on both prongs, relief is due to be denied.  Id.  As a result, once a court decides that one of the requisite showings has not been made it need not decide whether the other one has been.  Id. at 697, 104 S. Ct. at 2069 (A court need not "address both components of the inquiry if the [petitioner] makes an insufficient showing on one."); Duren v. Hopper, 161 F.3d 655, 660 (11th Cir. 1998) ("if a defendant cannot satisfy the prejudice prong, the court need not address the performance prong").  In this case we need not look beyond the prejudice prong.

To establish prejudice, a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.  A "reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id.  "[P]etitioners must affirmatively prove prejudice because '[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.  [T]hat the errors had some conceivable effect on the outcome of the proceeding' is insufficient to show prejudice."  Gilreath v. Head, 234 F.3d 547, 551 (11th Cir. 2000) (alteration in original) (quoting Strickland, 466 U.S. at 693, 104 S. Ct. at 2067).

7

**III.**

In denying the petitioners' new trial motions as untimely, the district court stated that if they had been timely filed it would have granted them based upon the weight of the evidence, and demonstrated its sincerity by setting out in some detail the reasons it would have done so. That, the petitioners contend, is all we need to know – had their counsel not messed up, the district court would have ordered a new trial.

The government acknowledges that the district court would have given the petitioners a new trial upon timely motions. However, it contends that would have done the petitioners no good because this Court would have reversed the grant of a new trial when the government appealed. According to the government, it is apparent that we would have reversed any relief granted on weight of the evidence grounds, because in the first appeal we determined that the evidence was sufficient to convict and for that reason we reversed the district court's post-verdict judgments of acquittal. See Butcher, 273 F.3d at 1035 (appendix).

The petitioners argue that it does not matter what this Court would have done with the government's appeal from the grant of a new trial, because prejudice ought to be determined at the trial court level as though the government had no right to appeal. The government says not so, because it does have the right to

8

appeal the grant of new trial motions, and it certainly would have done so in this case. The government's representation to us that it would have appealed is amply corroborated by the dogged persistence it has displayed in defending the jury's verdict throughout the six-year, post-conviction history of this case. We have no doubt that the government would have appealed had the district court granted the motions for new trial, just as we have no doubt that the district court would have granted the motions had they been timely filed.

The question, then, is whether in deciding a Strickland prejudice issue in the post-verdict context we look to the result of any district court action, including the outcome of any appeal from it, or instead freeze our inquiry at the district court level. The well-worn formulation is that for prejudice to exist, there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. But when the performance that is being challenged occurred in a proceeding from which the government would have had the right to appeal, does "the result of the proceeding" mean the result of the proceeding in the district court, or does it mean the result after appeal? We think

9

that what would have happened on appeal, if it can be ascertained with reasonable confidence, must be taken into account.

We think so for two reasons. First, to make the prejudice determination without taking into account the government's right to appeal would effectively deprive the government of the right to appeal in situations like the one here. It would make the government's right to appeal dependant upon what defense counsel does or fails to do. If defense counsel files a new trial motion in a timely fashion, the government would be able to obtain review of the district court's ruling that the weight of the evidence predominated heavily against the jury verdict. But if defense counsel files an untimely motion, which the district court indirectly grants by ordering a new trial on the back of an ineffective assistance claim brought in a § 2255 proceeding, under petitioner's position the government would not be able to obtain review of the weight of the evidence ruling. That state of affairs would not make any sense.

Second, the purpose and focus of the prejudice inquiry, which is the fairness and reliability of the criminal proceeding, is not served by deciding the issue without regard to what would have happened on appeal. An enlightening decision on this point is <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 113 S. Ct. 838 (1993), where the Supreme Court instructed us that "an analysis focusing solely on mere outcome

10

determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." Id. at 369, 113 S. Ct. at 842.

The question the Supreme Court faced in Fretwell is analogous to the one before us. A state court jury within the geographic boundaries of the Eighth Circuit had sentenced the habeas petitioner, Fretwell, to death. The only aggravating circumstance found by the jury was that the murder, which had occurred during a robbery, was committed for pecuniary gain. Id. at 366, 113 S. Ct. at 841. At the time of sentencing Fretwell's counsel failed to object to the use of that aggravating circumstance on the ground that it duplicated an element of the capital offense. Id. at 367, 113 S. Ct. at 841. If he had, the objection would have been valid under the law of the Eighth Circuit, as announced in Collins v. Lockhart, 754 F.2d 258, 265 (8th Cir. 1985), which was on the books and still in effect at the time of the sentence hearing. See Fretwell, 506 U.S. at 367-68, 113 S. Ct. at 841-42.

After the state courts upheld his conviction, Fretwell convinced a federal district court to grant him habeas relief on ineffective assistance grounds because of his counsel's failure to object to the use of that aggravating circumstance. Id. at 367, 113 S. Ct. at 841. In affirming the grant of relief, the Eighth Circuit concluded that Fretwell had been prejudiced by his counsel's failure to object. Id.

11

at 368, 113 S. Ct. at 841-42 (citing Fretwell v. Lockhart, 946 F.2d 571 (8th Cir. 1991)).  It reached that conclusion even though the Collins decision had been overruled after Fretwell was sentenced, a development which meant that there would have been no merit to the objection that counsel was faulted for not making. Id.[2]

It didn't matter that Collins had been subsequently overruled, the Eighth Circuit reasoned, because the error in Collins had not been found out, and that decision was still useable precedent (at least in that circuit) at the time of Fretwell's sentencing.  Fretwell, 506 U.S. at 368, 113 S. Ct. at 842.  The Eighth Circuit reasoned that because of its own interpretation of Federal law in effect at the time Fretwell was sentenced, the state trial court would have sustained a Collins objection had Fretwell's attorney made one, as he should have, and that would have wiped out the only aggravating circumstance the jury found.  Id.  With no aggravating circumstance, Fretwell would have escaped a death sentence.  Id.

The Supreme Court reversed.  Id. at 373, 113 S. Ct. at 845.  In explaining why, the Court emphasized that the "touchstone of an ineffective assistance claim

_____

[2] The overruling had resulted from the intervening Supreme Court decision, Lowenfield v. Phelps, 484 U.S. 231, 108 S. Ct. 546 (1988). That decision had caused the Eighth Circuit to recognize that its Collins decision, which Fretwell's attorney had failed to take advantage of, was no longer good law.  Fretwell, 506 U.S. at 368, 113 S. Ct. at 841-42 (noting that the Eighth Circuit had overruled Collins in Perry v. Lockhart, 871 F.2d 1384, 1393 (8th Cir. 1989), based on the Supreme Court's opinion in Lowenfield).

12

is the fairness of the adversary proceeding." Id. at 370, 113 S. Ct. at 843. Put a little differently, "'the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial.'" Id. at 369, 113 S. Ct. at 842 (quoting United States v. Cronic, 466 U.S. 648, 658, 104 S. Ct. 2039, 2046 (1984)). That is why Strickland said that in order to show prejudice, a petitioner must show "'that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Id. at 369, 113 S. Ct. at 842 (quoting Strickland, 466 U.S. at 687, 104 S. Ct. at 2064). To focus on outcome alone, as the Eighth Circuit did, without regard to whether counsel's error rendered the result of the proceeding fundamentally unfair or unreliable, would grant the petitioner "a windfall to which the law does not entitle him." Id. at 370, 113 S. Ct. at 843.

That last observation is entirely consistent with the Supreme Court's rejection of a "sporting theory of justice" when it was formulating the prejudice component of Brady claims. See Brady v. Maryland, 373 U.S. 83, 90, 83 S. Ct. 1194, 1198 (1963). We likewise reject the sporting theory of justice reflected in the petitioners' freeze-frame approach to determining prejudice. They are not entitled to a windfall, and we would not be faithful to the teachings of the Supreme Court's Fretwell decision if we accepted their focus on outcome to the exclusion of

13

any consideration of fairness and reliability. For better or worse, the federal criminal justice system has defined into the concept of fairness and reliability, as it relates to new trial rulings, an opportunity for the government to appeal. As a result, in deciding whether petitioners were prejudiced by their counsels' failure to file timely motions for a new trial, we must consider what would have happened in the government's appeal if the motions had been timely and the district court had granted them. So, the prejudice determination turns on whether it is reasonably probable that we would have affirmed the grant of a new trial on grounds of the weight of the evidence. We turn to that question now.

Deciding what we would have done had the district court granted a new trial is made easier by that court's detailed explanation of why it would have done so had petitioners' trial counsel given it the opportunity. In its order denying the motions for new trial as untimely, the district court set out 19 pages of dicta explaining why it thought that the weight of the evidence predominated so heavily against the verdict that letting the verdict stand was a miscarriage of justice. That explanation was de-dicta'ed by the court when it incorporated it into the order granting § 2255 relief on ineffective assistance grounds because of counsels' failure to file the new trial motions in time. In effect, we are reviewing that part of the order denying the new trial motions as though they had been granted.

14

The petitioners ask that we conduct our review with a hand on their side of the scale, asserting that we owe (or, rather, would have owed) deference to the district court's decision to grant their motions for new trial. The petitioners emphasize and attempt to enlarge the difference between the de novo standard of review applicable to grants of judgments of acquittal and the abuse of discretion review applicable to grants of new trial. The reason they do so is that the law of the case from the first appeal, which involved the grant of a judgment of acquittal, establishes that on de novo review the evidence was sufficient to convict the petitioners. See Butcher, 273 F.3d at 1028-29, 1035 (appendix).

The difference between the two standards of review should not be overstated. We do review the grant of a motion for judgment of acquittal de novo, viewing the evidence in the light most favorable to the government in determining whether a reasonable jury could have concluded beyond a reasonable doubt that petitioners were guilty. United States v. Abbell, 271 F.3d 1286, 1299 (11th Cir. 2001). This evaluation is "comparable to the standard used in reviewing the sufficiency of the evidence to sustain a conviction" when a defendant directly appeals his conviction. United States v. Ellington, 348 F.3d 984, 989 (11th Cir. 2003).

15

As for orders granting a motion for new trial, we have said that we generally review such orders for clear abuse of discretion. United States v. Pedrick, 181 F.3d 1264, 1266 (11th Cir. 1999). Although we have said that, we have also observed that we "accord less deference to a district court's grant of a new trial than the 'abuse of discretion' standard of review implies." United States v. Cox, 995 F.2d 1041, 1043 (11th Cir. 1993).[3] To be honest about it, at least insofar as weight of the evidence is concerned:

> the label 'abuse of discretion' belies the standard of review that we actually apply to grants of motions for a new trial. We may conclude that the district court overreached its authority by granting a new trial if our review of the record reveals that the evidence did not preponderate heavily against the jury's verdict.

Id. at 1044. The grant of a motion for new trial generally is more closely scrutinized than a denial, and the grant of new trial based on the weight of the evidence is more closely scrutinized than the grant of new trial on other grounds. United States v. Martinez, 763 F.2d 1297, 1312-13 (11th Cir. 1985).

When reviewing the grant of a motion for new trial, we keep in mind that a district court may weigh the evidence and consider the credibility of the witnesses. Id. at 1312. However, we also keep in mind that the court "may not reweigh the evidence and set aside the verdict simply because it feels some other result would

---

[3] Cox is a civil case, but we review the grant of a new trial under the same standard in civil and criminal cases. Cox, 995 F.2d at 1043.

16

be more reasonable. The evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." Id. at 1312-13 (internal quotations omitted). We limit in this manner the district court's ability to reweigh the evidence, "because when the jury verdict is set aside usual deference to the trial judge conflicts with deference to the jury on questions of fact" thereby undermining trial by jury. Cox, 995 F.2d at 1044.[4] For these and other reasons, while we do not conduct pure de novo review in these circumstances, the review that we do conduct is not much different because we want "to assure that the judge does not simply substitute his judgment for that of the jury." Conway v. Chem. Leaman Tank Lines, Inc., 610 F.2d 360, 363 (5th Cir. 1980).[5]

We now turn to whether it is reasonably probable that we would have affirmed the district court if the timely filing of motions had made it possible for that court to grant a new trial. This involves deciding whether it is reasonably

---

[4] We do not mean to suggest that a district court may never grant a motion for new trial based on the weight of the evidence where the evidence is sufficient for conviction. The Rule 29 and Rule 33 standards are not identical. In a proper case – a case in which the evidence of guilt although legally sufficient is thin and marked by "uncertainties and discrepancies," Martinez, 763 F.2d at 1313 – there is room between the two standards for a district court to reweigh the evidence and re-evaluate the credibility of witnesses. See id. at 1312-13; see also Tibbs v. Florida, 457 U.S. 31, 42-43, 102 S. Ct. 2211, 2218-19 (1982). However, such a case will be rare.

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

17

probable that we would have found, based on the totality of the record, that the district court did not abuse its discretion in concluding that the evidence so heavily preponderated against the jury's verdict that it would have been a miscarriage of justice for the verdict to stand. See Cox, 995 F.2d at 1043. Because that inquiry is part and parcel of the ineffective assistance issue in this case, a reasonable probability is one sufficient to undermine our confidence in the outcome of the trial and motions for new trial proceeding, which outcome is that the petitioners were convicted and their convictions were left standing.

As we have already mentioned, the district court has given us a detailed explanation of why it would have granted the petitioners' motions for new trial had they been timely. The problem is not with the thoroughness of the district court's explanation, but with the correctness of it. The court's explanation is replete with instances in which it either quarrels with our prior holdings about the most likely inferences to be drawn from the evidence, or ignores those holdings outright. Our findings from and about the evidence have already been set out at length in the opinion we issued in the first appeal in this case. Butcher, 273 F.3d at 1029-35 (appendix). Instead of restating them, we think it will be more useful to illustrate some of the ways in which the district court's reasoning and findings conflict with the law of the case established by our own prior reasoning and findings.

18

For example, the district court's order states that "[n]o evidence established that the defendants actively misled anyone concerning Dr. Renick's exclusion." Compare that finding with the following statement from our first opinion: "At trial, the government established that the defendants mislead [sic] their supervisors about the extent, duration and significance of Renick's exclusion." Butcher, 273 F.3d at 1032 (appendix).

As one example of evidence supporting that conclusion, our prior opinion cites to the trial testimony of Dr. Herring concerning a meeting he had with the petitioners. Id. (citing to R8-140-43, which contains Dr. Herring's testimony). The purpose of that meeting was to obtain Dr. Herring's endorsement of Butcher's recommendation that Renick be hired as medical director. Dr. Herring testified that Renick mentioned his prior legal problems at the meeting but said they were the result of "billing errors," and that "the sum total" of his penalty was that he had to "serve community volunteer time."

The district court found Dr. Herring's testimony that he had not been informed of Renick's prior conviction unbelievable in light of the fact that he later testified that he had been so informed. However, there was no inconsistency in his testimony. Dr. Herring's actual testimony was that he had not been informed that Renick was "a convicted felon." That testimony is not inconsistent with his later

19

testimony that Renick had told him that because of "some billing errors," a judge

had ordered him to "serve community volunteer time."

Another example of the district court's findings conflicting with the law of

the case is its continued reliance upon the fact that "Renick's name and

Medicare/CHAMPUS identification number were placed on certain bills that were

sent to Medicare and CHAMPUS . . . as evidence of candor on the parts of the both

defendants." Butcher, 273 F.3d at 1032-33 (appendix). In our first opinion, we

considered but rejected that very finding. We explained that:

> the evidence produced at trial shows that all billing relevant to the
> case at bar was submitted using the hospital's, not the individual
> provider's, provider number. The government adequately established
> that when, as here, Medicare and CHAMPUS are billed under the
> hospital's provider number, neither agency has cause to even review
> the name or number associated with the treating physician. Moreover,
> the government also established at trial that the 'identification'
> number that appeared on a few of the bills submitted to Medicare and
> CHAMPUS was Renick's state license number and not his Medicare
> and/or CHAMPUS identification number. Finally, the government
> further established at trial that a state license number would not advise
> either Medicare or CHAMPUS that Renick was the provider for
> whose services they were being billed.

Id. at 1033. In that manner we rejected any notion that the petitioners' use of

Renick's state license number was evidence of their candor, or of a lack of intent to

defraud. Id. In spite of that conclusion, the district court found exactly the

20

opposite to be true. It did so without even mentioning this Court's first opinion, or our findings and conclusion on this point.

Yet another example involves the 1994 submission by the Rivendell hospital in Panama City, upon Butcher's sworn signature, of certain cost reports to Medicare that included requests for reimbursements for Renick's services. The cost reports categorized Renick's services as 100 percent "administrative," even though he was primarily treating patients. Butcher signed the cost reports in her capacity as CEO and administrator. By signing the cost reports, Butcher certified that she had examined them, that to the best of her knowledge and belief they were true, correct, and complete, that she was familiar with the applicable laws, and that the cost reports complied with those laws. Butcher, 273 F.3d at 1033-34 (appendix).

In support of the motions for judgment of acquittal, Butcher asserted that she had signed those reports without reviewing them after they had already been electronically filed. The district court believed her, and for that reason when granting her a judgment of acquittal it discounted her sworn signature as evidence of her knowledge as well as of her intent to improperly bill Medicare for Renick's services. Id. at 1034 (appendix). In reversing that judgment of acquittal, we held

the district court had erred in accepting Butcher's argument and making the finding it did about the cost reports.  Id.

We expressly held that there was ample evidence to show Butcher knew that Renick was excluded from billing Medicare, that his services could not be reimbursed, and that Renick did not spend all of his time in administrative tasks. Id.  We found that the sworn certification Butcher signed was "clear and unambiguous" proof of those facts.  Id.  We held that the true facts, taken together with Butcher's certification of the accuracy of the cost reports charging Medicare for 100 percent of Renick's time as an administrative cost, amply supported the finding implicit in the jury's verdicts of Butcher's knowledge and intent to improperly bill Medicare for Renick's services.  Id.

In explaining why it felt that the petitioners were entitled to the grant of their motions for new trial, the district court once again found that "[t]here was no evidence that either Dr. Renick or Butcher had any knowledge" of how Renick's services were allocated in the cost reports.  That finding necessarily included a subsidiary one that Butcher's sworn signature on the certification did not evidence that she was aware of the contents of the report – a finding that could not have more clearly conflicted with the law of the case as established by our first opinion. If the district court had followed the law of the case in this and other respects, it

22

would not have concluded that the petitioners were entitled to a new trial on grounds of the weight of the evidence.

## IV.

For these reasons, we conclude that there is no reasonable probability that if the new trial motions had been filed on time, allowing the district court to grant them on weight of the evidence grounds, we would have affirmed. Our confidence in the outcome of the petitioners' trial and post-verdict proceedings are not undermined. The petitioners have failed to demonstrate the requisite prejudice from their counsels' failure to file their motions for a new trial in a timely fashion. Ineffective assistance of counsel has not been shown, and the district court should not have granted the petitioners' § 2255 motions. When our mandate issues in this appeal, it will be time for the petitioners to begin serving their sentences.

The district court's judgment granting petitioners' § 2255 motions and setting aside their convictions and sentences is REVERSED.