[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-14175
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 13, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-00313-CR-T-27-MSS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LARRY P. NARDELLI,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(October 13, 2010)

Before BLACK, PRYOR and MARTIN, Circuit Judges.

PER CURIAM:

Larry Nardelli appeals his convictions after a jury found him guilty of one

count of conspiracy to commit bank fraud, loan fraud, and money laundering, in violation of 18 U.S.C. § 371, two counts of making false statements to a bank, in violation of 18 U.S.C. § 1014, two counts of scheming to commit bank fraud, in violation of 18 U.S.C. § 1344, and one count of money laundering in violation of 18 U.S.C. § 1957. Nardelli argues that the district court erred in denying his motions for judgment of acquittal and for a new trial. After review, we hold that the evidence presented at trial was sufficient to support his convictions. We also hold that the district court did not abuse its discretion in denying Nardelli's motion for new trial because the evidence did not preponderate heavily against the jury's verdicts. For the reasons that follow, we affirm.

I.

Nardelli argues that the district court erred in denying his motion for judgment of acquittal. He claims that because two bank officers testified that they did not believe that Nardelli defrauded them and because they could not point to any particular fraudulent actions Nardelli had taken, there was no "cause and effect" relationship between Nardelli's conduct and their lending decisions. Thus, Nardelli argues, no reasonable jury could have found him guilty of conspiracy, making false statements, bank fraud, and money laundering. We disagree.

We review de novo whether there is sufficient evidence in the record to

2

support a jury's verdict in a criminal trial, taking the evidence in the light most favorable to the government.[1] United States v. Maxwell, 579 F.3d 1282, 1299 (11th Cir. 2009). "Accordingly, we are obliged to resolve any conflicts in favor of the Government, draw all reasonable inferences that tend to support the prosecution's case, and assume that the jury made all credibility choices in support of the verdict." Id. "We will not overturn a conviction on the grounds of insufficient evidence unless no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Wright, 392 F.3d 1269, 1273 (11th Cir. 2004) (quotation marks omitted). It is therefore "not enough for a defendant to put forth a reasonable hypothesis of innocence, because the issue is not whether a jury reasonably could have acquitted but whether it reasonably could have found guilt beyond a reasonable doubt." United States v. Thompson, 473 F.3d 1137, 1142 (11th Cir. 2006). "Because the jury is free to choose among reasonable constructions of the evidence, the evidence may be sufficient even if it is not entirely inconsistent with conclusions other than guilt." United States v. Ndiaye, 434 F.3d 1270, 1294 (11th Cir. 2006).

---

[1] We note that the basis for Nardelli's motion to the district court appears to differ substantially from the argument he now makes. Where a defendant raises a sufficiency of the evidence challenge on appeal, but presents different arguments than were raised before the district court, we review only for plain error. See United States v. Hunerlach, 197 F.3d 1059, 1068 (11th Cir. 1999). We need not decide whether the arguments Nardelli now makes were sufficiently preserved, however, because we find the evidence sufficient even under a de novo standard of review.

"To obtain a conspiracy conviction under § 371, 'the Government must prove (1) that an agreement existed between two or more persons to commit a crime; (2) that the defendant knowingly and voluntarily joined or participated in the conspiracy; and (3) a conspirator performed an overt act in furtherance of the agreement.'" United States v. Ternus, 598 F.3d 1251, 1255 (11th Cir. 2010) (quoting Ndiaye, 434 F.3d at 1294). "[T]he existence of the agreement and a defendant's participation in the conspiracy may be proven entirely from circumstantial evidence." United States v. McNair, 605 F.3d 1152, 1195 (11th Cir. 2010).

Section 1014 makes it illegal to knowingly make a false statement or report to a federally insured bank. See 18 U.S.C. § 1014. The focus of § 1014 "is on the defendant's intent rather than on the victim." United States v. Johnson, 585 F.2d 119, 124 (5th Cir. 1978).[2] The bank need not be aware that the statement was false, nor does it need to be influenced by the false statement. Id. For these reasons, a defendant may be found guilty of violating § 1014 if he merely had "a reasonable expectation that the [false] statement would reach [the bank]," and a defendant cannot shield himself from criminal liability by having a third party

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

4

present the false statement to the bank. United States v. Lentz, 524 F.2d 69, 71 (5th Cir. 1975). In order to sustain a conviction for bank fraud under § 1344, the government must show that the defendant knowingly participated in a "scheme or artifice . . . to defraud" a federally insured bank of money or property. United States v. McCarrick, 294 F.3d 1286, 1290 (11th Cir. 2002). As with conspiracy, the government may prove a defendant's knowledge and participation in the scheme through circumstantial evidence. See United States v. Williams, 390 F.3d 1319, 1325 (11th Cir. 2004) (explaining that "circumstantial evidence may prove knowledge and intent"). "Money laundering occurs when one 'knowingly engages or attempts to engage in a monetary transaction in criminally derived property.'" United States v. Nolan, 223 F.3d 1311, 1315 (11th Cir. 2000) (quoting 18 U.S.C. § 1957). To prove that a defendant aided and abetted any of these offenses, the government must show "that [the] substantive offense was committed, that the defendant associated himself with the criminal venture, and that he committed some act which furthered the crime." United States v. Hamblin, 911 F.2d 551, 557 (11th Cir. 1990).

The evidence presented at trial was sufficient to support Nardelli's convictions. As the district court found, there was ample evidence that Nardelli was a knowing participant in the conspiracy and was guilty of money laundering.

5

There was also sufficient evidence that Nardelli, at a minimum, aided and abetted the making of false statements and bank fraud.

Viewed in a light most favorable to the government, two of his co-conspirators, Tringali and Yanchek, testified and implicated him in the fraudulent scheme. Tringali specifically testified that Nardelli was "on our team," and that Nardelli and his co-conspirators were concerned about criminal liability resulting from their frauds. The evidence at trial showed that Nardelli proposed that the co-conspirators enter into sham contracts with entities he controlled, which were then submitted to the lenders for the purpose of falsely demonstrating that his co-conspirators had sufficient capital to meet the banks' lending requirements. The evidence further showed that Nardelli requested that another individual, Robert Perkins, execute one of these contracts to conceal his involvement in the transaction, which strongly supports Nardelli's knowledge of the fraudulent activity. There was also evidence that Nardelli was present when statements he knew to be false were made to lenders in an effort to secure financing, and that Nardelli actually submitted financial statements to at least one lender that he knew to be falsified. This evidence is more than sufficient to support the jury's conclusion that Nardelli knowingly participated in the conspiracy, and that he at least aided and abetted the making of false statements and bank fraud. Given the

6

evidence that Nardelli knowingly participated in the conspiracy and actively furthered the commission of the offenses, there was also sufficient evidence to establish that Nardelli knew that the proceeds he received from the Mercantile Bank loan were derived from the illegal activities. This evidence therefore supports his money laundering conviction.

Nardelli's argument regarding the bank officers' testimony is unpersuasive. Nardelli's guilt or innocence does not turn on the bank's understanding, or lack thereof, regarding the nature of the fraud or Nardelli's role in it. See, e.g., Johnson, 585 F.2d at 124 ("The [bank's] awareness of the fraud is not relevant" to whether a violation of § 1014 occurred). In any event, the other evidence presented at trial was more than sufficient to sustain Nardelli's convictions. The district court did not err in denying Nardelli's motion for judgment of acquittal.

II.

Nardelli argues that the district court abused its discretion when it denied his motion for new trial. He claims that the district court relied too heavily on testimony from codefendants who had pleaded guilty and were seeking a reduced sentence, to the exclusion of bank officers who testified that Nardelli did not induce them to make the loans in question. Relying on our decision in United States v. Hands, 184 F.3d 1322 (11th Cir. 1999), he says that he is entitled to a new

trial because the testimony of the codefendants was the "backbone" of the government's case, and that it would be "a miscarriage of justice" if the bank officers' testimony received "less respect than the jaded testimony of cooperating witnesses seeking a reduced sentence from the prosecutor."

We review a district court's denial of a motion for new trial for abuse of discretion. United States v. Tokars, 95 F.3d 1520, 1531 (11th Cir. 1996). A motion for a new trial on the ground that the verdict is contrary to the weight of the evidence raises issues different from those involved in a motion for a judgment of acquittal based on the sufficiency of the evidence. United States v. Martinez, 763 F.2d 1297, 1312 (11th Cir. 1985). "'On a motion for a new trial based on the weight of the evidence, the court need not view the evidence in the light most favorable to the verdict. It may weigh the evidence and consider the credibility of the witnesses.'" United States v. Hernandez, 433 F.3d 1328, 1335 (11th Cir. 2005) (quoting Martinez, 763 F.2d at 1312). "If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury." Id. (quotation marks omitted). That said, the district court "'may not reweigh the evidence and set aside

8

the verdict simply because it feels some other result would be more reasonable. The evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand.'" Butcher v. United States, 368 F.3d 1290, 1297 (11th Cir. 2004) (quoting Martinez, 763 F.2d at 1312–13). "Motions for new trials based on weight of the evidence are not favored" and should be granted "sparingly and with caution," and only in "exceptional cases." Martinez, 763 F.2d at 1313 (quotation marks omitted).

The district court did not abuse its discretion in concluding that the evidence did not preponderate heavily against the jury's verdicts. As explained above, there was significant evidence establishing Nardelli's guilt on the counts of conviction. Although some of that evidence consisted of co-conspirator testimony, the district court found their testimony credible and it was sufficiently corroborated by other evidence presented at trial. Against this evidence, Nardelli relies only on the "favorable" testimony of the two bank officers. But those individuals had no knowledge of Nardelli's role in the conspiracy or the commission of the frauds. Their testimony was therefore of minimal value and it does not outweigh, much less heavily so, the evidence of Nardelli's guilt. Accordingly, this is not an "exceptional" case in which the evidence heavily preponderates against the jury's verdicts, such that it would be a miscarriage of justice to allow the verdicts to

stand.

Nardelli's reliance on our decision in Hands is misplaced. In that case, we held that the district court erred by admitting irrelevant evidence that the defendant abused his wife. Hands, 184 F.3d at 1326–29. In evaluating whether the error was harmless, we considered the potential prejudice that might have resulted against the record as a whole. Id. at 1329–33. We noted that the evidence against Hands consisted almost entirely of "highly questionable" and uncorroborated testimony from alleged co-conspirators. Id. at 1330–32. Because the jury was required to make its decision based on the conflicting testimony of the defendant and his alleged co-conspirators—in essence, to decide "which biased witnesses [it] chose to believe"—Hands's credibility was central to his defense. Id. at 1332. We concluded, therefore, that "[e]vidence that tended to erode Hands's credibility and to prejudice the jury against him . . . could have had a substantial-perhaps overpowering-impact on the jury's deliberations," and thus introduction of the evidence of spousal abuse, which the government highlighted, was not harmless.[3] Id. at 1332–33.

To the extent Hands, which was a harmless error decision, is relevant to the

_____

[3] We were, of course, careful to point out that a jury may properly convict a defendant on the basis of credible testimony from individuals seeking favorable treatment from the prosecution. See Hands, 184 F.2d at 1331.

10

district court's evaluation of Nardelli's motion for new trial, it does not support a finding of error. In contrast to the case in <u>Hands</u>, the government's case against Nardelli did not rest solely on the uncorroborated and "highly questionable" testimony of co-conspirators. To the contrary, Tringali's and Yanchek's testimony was consistent, each corroborated the other's version of events, and the district court found that they testified credibly. Furthermore, their testimony was corroborated by substantial documentary evidence, which supported the jury's conclusion that Nardelli committed the charged offenses. And finally, as explained above, the evidence Nardelli relies upon is of minimal value. Thus, the district court did not err in denying Nardelli's motion for new trial.

AFFIRMED.