**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 25-10460

Non-Argument Calendar

————————————

ROBERT DONELSON,

*Petitioner-Appellant,*

*versus*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

————————————

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket Nos. 5:21-cv-00213-RH-MAL,
5:18-cr-00035-RH-MAL-1

————————————

Before NEWSOM, MARCUS, and WILSON, Circuit Judges.

PER CURIAM:

Robert Donelson, a federal prisoner, appeals the district court's denial of his 28 U.S.C. § 2255 motion to vacate. Donelson

argues that his trial counsel was ineffective for failing to investigate a witness, accept the court's offered continuance to investigate the witness, and call the witness. After careful review, we affirm.

In a § 2255 proceeding, we review the district court's findings of fact for clear error and its legal conclusions de novo. *Devine v. United States*, 520 F.3d 1286, 1287 (11th Cir. 2008). "A claim of ineffective assistance of counsel is a mixed question of law and fact that we review de novo." *Id.*

The Sixth Amendment "right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 685–86 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771, n.14 (1970)). To succeed on a claim of ineffective assistance of counsel, a § 2255 movant "must satisfy both prongs of the test set out by the Supreme Court in *Strickland*." *Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004). First, the prisoner must prove that the attorney's performance was deficient, and second the prisoner must prove that deficiency prejudiced the defense. *Strickland*, 466 U.S. at 687. However, "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

In satisfying *Strickland*'s prejudice prong, a petitioner must demonstrate that his defense was prejudiced by the "seriously deficient performance of his attorney." *Butcher*, 368 F.3d at 1293. This requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." *Id.* (quoting *Strickland*, 466 U.S. at 694). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

At his criminal trial, Donelson was convicted of possessing 50 grams or more of methamphetamine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii) (Count 1); knowingly possessing, using, and carrying a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 2); and possessing ammunition and a firearm as a convicted felon in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) (Count 3). Evidence of the charges presented at trial included the contents of a backpack found with Donelson in a car he was driving on the day of his arrest; inside the backpack authorities found a silver box with "a fairly large quantity of methamphetamine," "a fully loaded .357 revolver," and some digital scales. On habeas, Donelson argues that his trial counsel, Randolph Murrell, was ineffective for failing to investigate and call the owner of the car, Jeanny Michelle Harvell, as a witness in his trial. Donelson claims that had she been called, Harvell would have testified -- as she claimed in a later affidavit -- that the backpack found in her car with Donelson belonged to a friend, and not Donelson.

However, as the record reflects, Murrell's failure to investigate and call Harvell as a witness was not prejudicial because there is no reasonable probability that her testimony would have changed the outcome of the trial. *Strickland*, 466 U.S. at 687; *Butcher*, 368 F.3d at 1293. This is because her testimony would have

been rebutted by her prior inconsistent statement, there were inconsistencies between her testimony and other trial evidence, and there was overwhelming evidence of Donelson's guilt.

In her affidavit, Harvell averred that on the night before Donelson's arrest, she loaned her Ford Mustang to a friend, who returned the car around 5:30 AM the next morning, noting that the car was skipping and stalling. Harvell claimed she called Donelson that morning to come over to test drive the car and fix it before taking her to work. After Donelson came and left with the car, the friend called Harvell to report that "she left her backpack in the car," and Harvell replied that she'd return it "as soon as" Donelson got back. Harvell said she called Donelson and "told him to keep the backpack with him if he got out of the car because the doors on the car didn[']t lock." Harvell added in her affidavit that Donelson had no knowledge of the contents of the backpack before his arrest.

However, had Harvell testified that Donelson had not taken her car until after 5:30 AM on the morning on his arrest, the government could have presented Harvell's prior inconsistent statement to an officer that Donelson had been driving her car for the two weeks prior to his arrest and that she did not own the gun and drugs. Notably, in that statement she made to the police, Harvell made no mention of a friend who borrowed the car or who she blamed for the backpack and its contents. Not only would these inconsistencies have undermined her credibility, but there also were significant inconsistencies between her affidavit and the evidence presented at trial. In particular, Bay County Florida Sheriff's

Office Investigator Vincent Cianelli testified that he'd been watching Harvell's house the morning of the arrest for about an hour when he saw Donelson emerge with the backpack, drive just a few feet to the next house over, walk inside with the backpack, stay inside five to ten minutes, exit with the backpack and drive back to the first home, walk inside with the backpack, stay for about five minutes, and then leave, still holding the backpack, to drive to a Harley-Davidson dealership -- activity that does not align with the details of Harvell's affidavit, including the pre-work test drive or her call that alerted Donelson to the backpack, which he was already carrying around and never attempted to return. In addition, Harvell's affidavit does not explain why, if Donelson was merely driving the car at her request to diagnose a mechanical problem, she would anticipate him getting out of the car and think it necessary to call him to tell him to take the backpack with him whenever he did so. These inconsistencies would have undermined Harvell's credibility and could have made the jury even more convinced that the gun and drugs were Donelson's.

Moreover, the record suggests that Harvell's story would have continued to change -- after the trial, she told Murrell's paralegal that Reyna Davis had borrowed her car the night before Donelson's arrest, and that Davis left a bag with her ID inside it in the car. But Harvell later told this same paralegal that Davis and another friend, Wendi Ware, had the car the night before Donelson's arrest, and the next morning, Ware, not Davis, "left her things in the car," with no specific mention of the backpack. Thus, it's not even clear what Harvell would have testified to at Donelson's trial,

and we cannot say there is a reasonable probability of a different outcome had she testified.

In addition, overwhelming evidence was presented against Donelson at trial that further undercuts the reasonable probability of a different outcome. *See Fortenberry v. Haley*, 297 F.3d 1213, 1228 (11th Cir. 2002) ("[T]he absence of exculpatory witness testimony from a defense is more likely prejudicial when a conviction is based on little record evidence of guilt."); *Butcher*, 368 F.3d at 1293. This includes Investigator Cianelli's testimony that he saw Donelson go into and out of homes with the backpack, which he likely would have left in the car if he was not on notice of it before Harvell called him. It also includes the investigator's testimony that after he followed Donelson to a Harley-Davidson dealership and turned on his patrol lights, he saw Donelson throw $4,000 into the air and run from police on foot, leaving the Mustang in drive to roll into a patrol car -- again, which Donelson would have had no reason to do if he was unaware of the backpack's contents. Additionally, in a jail call that took place during Donelson's booking, Donelson admitted that he had a pistol and 2 zips (drugs) on him -- and while Donelson argued that he'd heard about the drugs and gun from a prior call, no evidence of a prior call was submitted to the jury, and in the recorded prison call, Donelson said he "just walked in the door." The government also offered into evidence an additional recording in which Donelson was asked about what was in the car and he said "[t]here's some drugs." Further, the jury heard Rule 404(b) evidence of an incident involving Donelson only one month before the instant crime wherein Donelson was seen fleeing a car after a

law enforcement chase, notably leaving behind a gun and drugs, including methamphetamine, in the car.

On this record, Donelson has not established a reasonable probability that Harvell's testimony would have led to a different outcome at trial.  Accordingly, Donelson has failed to prove that his trial counsel was ineffective under *Strickland*, and we affirm the district court's dismissal of Donelson's § 2255 motion to vacate.

**AFFIRMED.**