**UNITED STATES of America,
Plaintiff–Appellant,**

**v.**

**Cary V. COX, Defendant–Appellee.**

**No. 91–9139.**

United States Court of Appeals,
Eleventh Circuit.

July 20, 1993.

Harry J. Fox, Jr., Asst. U.S. Atty., Macon, GA, for U.S.

Peter Zack Geer, Albany, GA, for Cox.

Before TJOFLAT, Chief Judge, CARNES, Circuit Judge, and JOHNSON, Senior Circuit Judge.

TJOFLAT, Chief Judge:

A federal jury convicted a Georgia county sheriff on twenty counts of mail fraud for floating his personal credit card debts through payments from a county-funded checking account for over four years. The United States appeals the district court's grant of a new trial. We reverse.

I.

Appellee Cary V. Cox served as Sheriff of Mitchell County, Georgia, and Thelma Wingate served as his secretary, during all relevant times. The Board of Commissioners of Mitchell County had the sole authority to approve county expenditures and disburse county funds, including those of the Sheriff's Office.

On January 1, 1986, Wingate prepared, and Cox signed, an application for a personal VISA credit card to be issued by Citibank in Sioux Falls, South Dakota. Citibank approved Cox's application and issued Cox a Citibank Preferred VISA Card. The Board of Commissioners previously had refused to authorize Cox to obtain a business credit card, did not assume responsibility for paying off Cox's personal VISA card debt, and had never permitted Cox to charge personal expenses to the county.

Cox charged many different kinds of items to his credit card. He charged handguns that he gave as gifts to deputy sheriffs. He charged a number of meals at a restaurant a scant two blocks from his office even though the Board of Commissioners had expressly forbidden him from billing such meals to the County. He charged cash advances without filing receipts with the Board to report corresponding expenditures. He charged a hotel bar liquor tab incurred at a seminar. He charged items related to legitimate county business. He also let Wingate charge a set of tires for her personal automobile.[1]

Ostensibly, Cox's personal charges were neither remarkable nor troubling; the card was, after all, his personal card.[2] Cox, however, paid off his personal VISA card debt with Mitchell County funds, not with his own money. Each month, Citibank mailed account statements from South Dakota to Cox in Georgia reflecting Cox's charges. In payment, Wingate prepared checks to Citibank drawn on a Board of Commissioners-funded "special account" of the Mitchell County Sheriff's Office, and Cox signed the checks. As each check covered only a portion of the monthly balances, substantial interest charges accrued. The checks had a space near the bottom left corner marked "For" followed by a blank line. On this line, Wingate did not write "car tires" or "gun" or "food" or "hard liquor" or any other such descriptive term; she opted instead for the

---

1. This charge is particularly suspect. Short of money and with her car tires in a terrible state of disrepair, Wingate asked Cox to let her charge a new set of tires for her personal car to the credit card. She told Cox that she would pay for the tires when she had sufficient funds. On July 28, 1987, Wingate charged $397.59 to Cox's credit card. On September 28, 1989, after more than two years had passed (and four months after the Georgia Bureau of Investigation began its probe into the Sheriff's Office's financial affairs), Wingate sent a check for $397.59 to Citibank; she did not pay Citibank the nearly $220 in interest charges that had accrued.

2. Although Citibank issued the credit card to Cox individually as a personal card, Cox claims that he never intended to use it personally. Rather, he testified that he intended to use the card for "[n]othing but the Sheriff's Office business." In his brief to this court, Cox claimed that he "did not place personal purchases and personal cash advances on his Visa credit card," that he used the "personal credit card to defray official expenses in the Sheriff's office, and that the County was re-imbursing for the same."

more obscure (but less damning) notation "Out of Town Travel." [3] Cox signed the checks and mailed them to Citibank in South Dakota. After the Georgia Bureau of Investigation undertook to investigate Cox's use of county funds to pay off his credit card debts, Mitchell County paid Citibank the outstanding balance on Cox's card.

On June 28, 1990, a federal grand jury indicted Cox and Wingate on twenty-four counts of mail fraud. Count one of the indictment alleged that Cox and Wingate conspired to defraud Mitchell County. Counts two through thirteen alleged that Cox and Wingate perpetrated mail fraud on Mitchell County when they received account statements from Citibank that were mailed through the United States Mails. Counts fourteen through twenty-four correlatively alleged that Cox and Wingate committed mail fraud when they mailed payment checks to Citibank through the United States Mails. Cox and Wingate pled not guilty.

A five-day jury trial began on July 31, 1991. After the United States presented its case in chief, Cox and Wingate moved for directed verdicts, but the court reserved its ruling until the close of the evidence. After the close of all the evidence, the district court dismissed count one against Cox, dismissed all counts except count eight (which dealt with the tires) against Wingate, and submitted the case to the jury. The jury found Cox guilty of twenty of the twenty-three counts of the indictment, and found Wingate guilty of count eight. Cox moved for a judgment of acquittal notwithstanding the verdict, *see* Fed.R.Crim.P. 29(c) (1993),[4] or, in the alternative, a new trial, *see* Fed.R.Crim.P. 33 (1993),[5] as to each count of conviction. Wingate moved for a judgment of acquittal only.

The district court denied both motions for a judgment of acquittal,[6] but granted Cox's motion for a new trial because it thought that the evidence supporting the jury's finding of fraudulent intent might be a bit thin and, thus, that Cox may have suffered a miscarriage of justice. The United States appeals.

## II.

In *United States v. Martinez*, 763 F.2d 1297, 1312 (11th Cir.1985), we announced that we would review a district court's grant of a new trial in a criminal case for a clear abuse of discretion. In fact, however, *Martinez* enunciated a rather restrictive standard for a district court's review of a jury's verdict.

> While the district court's discretion is quite broad, there are limits to it. The court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable. The evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand. Motions for new trials based on weight of the evidence are not favored. Courts are to grant them sparingly and with caution, doing so only in those really "exceptional cases."

*Id.* at 1312–13 (citations omitted). The *Martinez* court's cautionary commentary counsels us to accord less deference to a district court's grant of a new trial than the "abuse of discretion" standard of review implies.

We review a district court's grant of a motion for a new trial under the same standard in civil and criminal cases. *Compare Jackson v. Pleasant Grove Health Care Ctr.*, 980 F.2d 692, 695 (11th Cir.1993) (civil), *and Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir.1984) (civil), *with Martinez*,

---

**3.** Cox also paid Citibank the required application fee, four annual membership fees, and made interest payments on his outstanding credit card balances with checks drawn on the Sheriff's Office's county-funded special account that were marked "Out of Town Travel."

**4.** Rule 29(c) provides that
[i]f the jury returns a verdict of guilty ..., a motion for judgment of acquittal may be made or renewed within 7 days after the jury is discharged.... If a verdict of guilty is re-

turned the court may on such motion set aside the verdict and enter judgment of acquittal.

**5.** Rule 33 provides that "[t]he court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice."

**6.** Wingate has appealed the district court's denial of her motion for a judgment of acquittal in a companion case before this court: *United States v. Wingate*, No. 91–9155.

763 F.2d at 1312 (criminal). Although we actually review a court's denial of a motion for a new trial for abuse of discretion, we more closely scrutinize a court's grant of a new trial. In *Hewitt*, we explained that

> A district court ruling on a motion for a new trial is generally reviewed under an abuse of discretion standard. When the trial court *grants* a new trial our review is broader and requires a stringent application of the same standard. This is because when the jury verdict is set aside usual deference to the trial judge conflicts with deference to the jury on questions of fact. When a new trial is granted on the basis that the verdict is against the weight of the evidence our review is particularly stringent....

732 F.2d at 1556 (emphasis added); *see also Jackson*, 980 F.2d at 695 ("When the district court grants the motion for a new trial, this Court's review is broader and the application of the abuse of discretion standard more stringent."); *Redd v. City of Phenix, Ala.*, 934 F.2d 1211, 1215 (11th Cir.1991) ("When a district court grants a new trial because the verdict is against the weight of the evidence, this court's review will be extremely stringent to protect a party's right to a jury trial. This is particularly true when the new trial is premised upon sufficiency of the evidence as opposed to some factor which may have infected the evidence itself."). In a similar vein, our predecessor circuit explained that

> Recent cases in our circuit apply a somewhat broader review ... to orders that *grant* new trials, mandating the greatest degree of scrutiny where, as apparently here, a new trial is decreed on the ground that the verdict is against the weight of the evidence. We do so to assure that the judge does not simply substitute his judgment for that of the jury.... In a further effort to avoid such substitutions, we have

noted that new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence.

*Conway v. Chemical Leaman Tank Lines, Inc.*, 610 F.2d 360, 362–63 (5th Cir.1980);[7] *see also Hewitt*, 732 F.2d at 1556; *cf. Redd*, 934 F.2d at 1215 ("When there is some support for a jury's verdict, it is irrelevant what we or the district court would have concluded.").

When a court's grant of a motion for a new trial comes before us, we are faced with two conflicting views of the case. In a criminal case, as here, the jury has told us that the defendant is guilty beyond a reasonable doubt, while the court, by granting a new trial, has told us that the jury was wrong and that the evidence weighed heavily against the verdict of twelve men and women honest and true. Given the disagreement between the judge and jury below, and despite the label "abuse of discretion" that we have attached to our review of grants and denials alike of motions for a new trial, we have, not surprisingly, accorded grants of such motions less deference than denials.

In short, the label "abuse of discretion" belies the standard of review that we actually apply to grants of motions for a new trial. We may conclude that the district court overreached its authority by granting a new trial if our review of the record reveals that the evidence did not preponderate heavily against the jury's verdict. In this case, the evidence does not contravene—on the contrary, it fully supports—the verdict. Accordingly, we reverse.

### A.

Mail fraud under 18 U.S.C. § 1341 (1988)[8] entails the use of the mails in a scheme

7. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

8. 18 U.S.C. § 1341 (1988) provides that
Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or

fraudulent pretenses, representations, or promises, ... places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, ... shall be fined not more than

intentionally to defraud another of money or property. *See United States v. Ethridge,* 948 F.2d 1215, 1216 (11th Cir.1991); *Pelletier v. Zweifel,* 921 F.2d 1465, 1498 (11th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 167, 116 L.Ed.2d 131 (1991). Section 1341 is designed to punish those who use the United States Mails to advance their fraudulent schemes. *Parr v. United States,* 363 U.S. 370, 389, 80 S.Ct. 1171, 1182, 4 L.Ed.2d 1277 (1960); *United States v. O'Malley,* 707 F.2d 1240, 1246 (11th Cir.1983).

▮▮ To establish that Cox committed mail fraud in violation of section 1341, the United States had to prove that Cox (1) intentionally participated in a scheme to defraud Mitchell County of money, and (2) used the mails to further that scheme. *See United States v. Downs,* 870 F.2d 613, 615 (11th Cir.1989); *United States v. Simon,* 839 F.2d 1461, 1465 (11th Cir.), *cert. denied,* 488 U.S. 861, 109 S.Ct. 158, 102 L.Ed.2d 129 (1988). Cox did not dispute the second prong, that the mails were heavily involved in his machinations (which is not surprising given the forty-eight months' worth of billings and payments that Cox and Citibank exchanged through the mail). He fervently argues, however, that the United States failed to introduce even "a scintilla of evidence" to demonstrate that he intentionally defrauded Mitchell County. Mail fraud, however, need not rest on the success of the fraudulent scheme; it may be predicated on the mere existence of such a scheme. *Pelletier,* 921 F.2d at 1498 ("A scheme to defraud need not be carried out to constitute a violation of the mail and wire fraud statutes. These statutes punish unexecuted, as well as executed, schemes.").

### B.

Cox urged the court to grant a new trial because (1) such was required in "the inter-est of justice," (2) "the evidence [was] insufficient to sustain a conviction," (3) "a reasonable mind could not fairly find [him] guilty beyond a reasonable doubt, viewing the evidence in the light most favorable to the Government," and (4) "there is no evidence to support the verdict of the jury and the principles of justice and equity require a new trial." In the context of this case, the first reason is just so much fluff, and the other three reasons are the same, to wit, a lack of evidence. Indeed, the district court explained that "sufficiency of the evidence is the only possible reason to grant a new trial in this case." [9]

The jury could (and, we believe, did) reasonably glean from the evidence presented at trial that Cox intended to defraud Mitchell County. The district court itself indicated that "Cox cannot credibly argue that his use of the VISA card should not be interpreted as evidence of intent to defraud. He knew the card was in his name and surely knew that the County was making payments on it." *Cf. United States v. Hawkins,* 905 F.2d 1489, 1496 (11th Cir.1990), *cert. denied,* 498 U.S. 1038, 111 S.Ct. 707, 112 L.Ed.2d 696 (1991) ("The Government need not produce direct proof of scienter in a [mail] fraud case, however; circumstantial evidence of criminal intent can suffice.").

▮▮ For forty-eight months, Cox floated the balance on his personal VISA card with Mitchell County's money. Whether his charges were for personal or official business, he wrote checks from a county-funded checking account and attributed them to paying off expenses for "Out of Town Travel." The evidence supported the jury's adjudication of guilt, and certainly did not "prepon-

---

$1,000 or imprisoned not more than five years, or both.

9. Anecdotally, we have recognized that "courts have granted new trial motions on weight of the evidence *only where* the credibility of the government's witnesses had been impeached and the government's case had been marked by uncertainties and discrepancies." *Martinez,* 763 F.2d at 1313 (emphasis added). Our first query under *Martinez* is whether Cox challenged the credibility of the United States' witnesses. The United States presented twenty-one witnesses at trial. Neither in his motion for a new trial nor in his brief to this court did Cox defy the credibility of one of these witnesses. The record justifies Cox's silence. Our second query under *Martinez* is whether any uncertainties or discrepancies sullied the United States' case. Again, Cox's motion below and his brief here did not object to the jury's verdict on this ground. Once more, the record vindicates Cox's lack of remonstrance.

derate heavily against the verdict" as *Martinez* requires for the grant of a new trial.

### III.

Because the evidence did not strongly preponderate against the jury's verdict, the trial court erroneously granted Cox's motion for a new trial. Accordingly, we reverse.

REVERSED.