**UNITED STATES of America, Plaintiff,**

v.

**Michael WALDEN, Torie Cross and Brandon Williams, Defendants.**

No. 04–20808–CR.

United States District Court, S.D. Florida.

June 10, 2005.

Michael Walden, Miami, FL, Pro se.

Steven Hunter Kassner, Coral Gables, FL, for Michael Walden, defendant.

Paul Joseph Donnelly, Paul J Donnelly PA, Miami, FL, for Torie Cross (2), DOB 7/6/79 Prisoner # 71371–004, defendant.

Marc David Seitles, Federal Public Defender's Office, Miami, FL, for Brandon Williams (3), DOB 6/25/79 Prisoner# 71370–004, defendant.

### ORDER DENYING DEFENDANT TORIE CROSS'S RENEWED MOTION FOR A JUDGMENT OF ACQUITTAL AND GRANTING DEFENDANT'S MOTION FOR A NEW TRIAL

UNGARO–BENAGES, District Judge.

THIS CAUSE is before the Court upon Defendant Torie Cross's Renewed Motion

for Judgment of Acquittal and/or Motion for a New Trial, filed April 18, 2005, and Defendant Torie Cross's Motion to Accept Reply as Timely Filed, filed May 25, 2005.

THIS COURT has considered the motions and the pertinent portions of the record, and is otherwise fully advised in the premises.

### Facts

On October 5, 2004, Defendants Torie Cross, Michael Walden and Brandon Williams were arrested during the course of a reverse-sting operation carried out by the Bureau of Alcohol. Tobacco, Firearms and Explosives and the Miami–Dade County Police Department. Criminal Complaint. On October 19, 2004, Cross was charged by indictment with the following six counts: (1) interference with interstate commerce, in violation of 18 U.S.C. § 1951(a); (2) conspiracy to possess with the intent to distribute at least fifteen kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846; (3) attempting to possess at least fifteen kilograms of cocaine, in violation of 21 U.S.C. § 846; (4) conspiracy to use and carry a firearm in furtherance of a crime of violence and a drug trafficking crime as set forth in (1), (2) and (3), in violation of 18 U.S.C. §§ 924(c)(1)(A) and 924(n); (5) using and carrying a firearm during the commission of a crime of violence and a drug trafficking crime as set forth in (1), (2) and (3), in violation of 18 U.S.C. § 924(c)(1)(A) and (2); and (6) possessing a firearm after having been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1). Counts One through Five named Michael Walden. Torie Cross and Brandon Williams as Defendants; Count Six named only Torie Cross as a Defendant.

On March 8, 2005, Williams pleaded guilty to Counts One through Five as well as to a separate count of possession of a firearm by a convicted felon. Change of Plea, D.E. # 40. The criminal indictment against Cross and Walden proceeded to a jury trial on April 4, 2005. Walden, charged with Counts One through Five, asserted an affirmative defense of entrapment in response to each count. Cross did not assert an entrapment defense but rather argued that he was innocent of all charges. At trial, Walden took the stand while Williams and Cross did not testify.

At trial, Walden testified that in August 2004 he spoke with an individual first known to him in the late 1990s when the two men were in prison together. Trial Transcript of Michael Walden, at 9. This individual, who was working for the government as a confidential informant, represented himself to be a drug trafficker and persuaded Walden to attempt to steal cocaine from other drug dealers supposedly known to the informant. *Id.* at 15. The robbery was scheduled to take place on October 5, 2004. On that date, Walden was met by Williams, who Walden had persuaded to join the robbery, and Cross, who was recruited by Williams and was unknown to Walden. *Id.* at 81. On October 5, 2004, the three men traveled to a hotel parking lot, where they were awaited by the informant. *Id.* at 85. Walden and the informant then met inside a van while Williams and Cross waited in a car parked several parking spaces away; Cross did not participate nor was he present during the conversation between Walden and the informant. *Id.* The conversation was taped and at trial the transcript was introduced into evidence. This conversation, as characterized by the government, dealt with the manner in which the cocaine to be robbed would be distributed among the

conspirators. Neither the confidential informant nor Walden refer to any other individual by name, instead referring to the other conspirators only as "them" or "we" during the pertinent portions of the conversation. Walden and the informant finished their conversation, joined Williams and Cross in the car and the four men drove to the location of the robbery. *Id.* at 86–87.

Officer John Devito testified that, upon arriving at the robbery location, Walden. Cross and Williams were arrested by law enforcement agents; when apprehended, Cross was found in possession of a mask and lying near a revolver. Trial Transcript of John Devito, at 122–23.

The government also called as a witness Eric Espinosa, a law enforcement officer who questioned Cross following his arrest. Officer Espinosa testified twice. During the first day of trial, Officer Espinosa testified that he and Cross participated in the following exchange: "[Cross] specifically wanted to know what he was arrested for. Once we explained to him what he was arrested for, he stated there's no reason for me to talk to you guys if you already knew what I was gonna do." Trial Transcript of Eric Espinosa, at 146. At the beginning of the second day of trial, the government called Officer Espinosa a second time, at which time he offered the following testimony:

Q. Agent Espinosa, yesterday I asked you questions about statements that the defendant Torie Cross made post having his Miranda waiver rights waived. Do you recall that questioning?

A. I do.

Q. Can you again tell me what was it that the defendant Torie Cross said to you?

A. Mr. Cross said why should I tell you anything if you already know what I was gonna go do.

Q. Did you say anything to the defendant Torie Cross to prompt this response?

A. That statement was given directly after I informed him of the charges against him.

Q. And what specifically did you inform him?

A. I told him he was being charged with conspiracy to commit armed drug trafficking, conspiracy to commit robbery, and conspiracy to possess cocaine with intent to distribute.

.　　.　　.　　.　　.

Q. ... Agent Espinosa, let me ask you, how are you able to remember that you advised Torie Cross of the charges that he was charged with?

A. Well, it's standard operating procedure. Once a person is Mirandized, which was verified by the form that was entered into evidence, we advise him of the charges, and then from there they can give us a written or taped statement at that point.

Trial Transcript of Eric Espinosa, second day, at 6–7, 13. At the close of the government's case. Cross's counsel moved orally for a judgement of acquittal based on the insufficiency of the evidence adduced by the government. This motion was denied.

On April 13, 2005, a jury acquitted Defendant Walden on all charges and found Defendant Cross guilty of Counts One and Four, respectively conspiracy to interfere with interstate commerce by means of robbery and conspiracy to use and carry a

firearm during a crime of violence and a drug trafficking crime. Cross was acquitted on Counts Two, Three, Five and Six. Cross has now renewed his motion for a judgment of acquittal or, alternatively, moves for a new trial based on the insufficiency of the evidence introduced at trial.

### Analysis

#### I. *Defendant's motion for judgment of acquittal*

■ In *Butcher v. United States*, 368 F.3d 1290, 1296–97 (11th Cir.2004), the court of appeals explained clearly the different legal standards that apply where, following conviction by a jury, a criminal defendant moves for a judgment of acquittal or a new trial based on the insufficiency of the evidence introduced during trial. A motion for judgment of acquittal should be granted only where, viewing the evidence in the light most favorable to the government, no reasonable jury could have concluded that the defendant was guilty of the crime of which he was convicted. *Id.* at 1297 (citing *United States v. Abbell*, 271 F.3d 1286, 1299 (11th Cir.2001)). *Accord Jackson v. Virginia*, 443 U.S. 307, 316, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ("If any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, then the jury's verdict must be upheld."); *United States v. O'Keefe*, 825 F.2d 314, 319 (11th Cir.1987) ("[Upon a motion for a judgment of acquittal, a district court must] determine whether, viewing all the evidence in the light most favorable to the Government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict, a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt."). Nevertheless, "there must be sufficient evidence to support all necessary elements of the crime." *United States v. Thomas*, 8 F.3d 1552, 1556 (11th Cir.1993). "[T]he requisite fact of intentional agreement or participation cannot be made out by piling inference upon inference," *Ingram v. United States*, 360 U.S. 672, 680, 79 S.Ct. 1314, 3 L.Ed.2d 1503 (1959), or by "suspicion and innuendo," *United States v. Palacios*, 556 F.2d 1359, 1365 (5th Cir.1977).

#### A. *Count One*

■ Count One charged Cross with conspiring with Walden and Williams to violate the Hobbs Act by planning to take cocaine from individuals believed to be engaged in narcotics trafficking by means of actual and threatened force, violence or injury. The Eleventh Circuit has held that in order to support a conviction for conspiracy to violate the Hobbs Act, "the government must prove ... that two or more persons agreed to commit a crime, *that the defendant knew of the conspiratorial goal*, and that he voluntarily participated in helping to accomplish that goal." *Thomas*, 8 F.3d at 1556 (emphasis added). Elaborating upon the second point in a separate opinion, the court of appeals explained under analogous circumstances that, "in order to support a guilty verdict, the government had to prove beyond a reasonable doubt not only that [the defendant] participated in an agreement to burglarize a house and rob it, but that the specific purpose of the robbery was[, as charged in the indictment,] to steal cocaine in order to distribute it." *United States v. Charles*, 313 F.3d 1278, 1284 (11th Cir. 2002). While proof of association with the conspirators is one factor that can be considered as evidence of a defendant's participation in a conspiracy, "[p]resence with conspirators alone, however, or close association with them, is not by itself sufficient

proof of participation in a conspiracy." *Thomas,* 8 F.3d at 1556.

■ Cross and the government each refer to the Eleventh Circuit Court of Appeals' decision in *Charles* to support their respective arguments. After considering *Charles,* the evidence introduced at trial and the parties' arguments,[1] the Court shall deny Cross's motion for a judgment of acquittal as to Count One based exclusively on the fact that Cross's post-arrest statement, read in the government's favor, tends to prove that Cross conspired to steal cocaine as charged in the indictment.

In *Charles,* the Eleventh Circuit considered the direct appeal of a defendant convicted of conspiring to possess with the intent to distribute cocaine and conspiring to use and carry a firearm in furtherance of this narcotics offense. While conceding that he intended to, and in fact did, conspire with his codefendants to perform a home invasion robbery and acted as the driver of the getaway car, the appellant argued that there was no evidence that he knew that the specific object of the robbery was drugs rather than money or other valuables. At trial, the government introduced evidence that he was present at a single meeting in the hotel room where the conspirators planned the robbery, that he drove the getaway car and that, during a post-arrest interview, he told a law enforcement agent that he was "not sure" whether the house targeted by the conspirators contained drugs. *Charles,* 313 F.3d at 1285–86. The videotaped recordings of the meeting at which the appellant was present established only that the conspirators, including appellant, engaged in general conversations about the burglary

itself, not about drugs or about drugs as the object of the burglary. *Id.* at 1286 & n. 7. (While there was evidence that the other conspirators might have discussed drugs when the appellant was present, these discussions were conducted in Creole and there was no evidence establishing that the appellant spoke Creole or otherwise could have understood any reference to drugs through spoken words or nonverbal gestures. *Id.*) Apart from these three pieces of evidence, the government introduced no evidence tending to prove that appellant had ever been told that the object of the burglary was to steal drugs. *Id.* at 1286. Reviewing this evidence in the light most favorable to the government, the court of appeals found that there was sufficient evidence to convict the appellant of a conspiracy to perform a home invasion robbery, but that there was insufficient evidence on which to convict him of the crime for which he was indicted: conspiracy to steal narcotics through a home invasion robbery. *Id.* at 1286–87. Appellant's conviction of conspiracy to violate the Hobbs Act was therefore reversed based on the absence of evidence proving a necessary element of the charged crime: that the appellant intended to steal narcotics during the home invasion. *Id.* at 1287.

In response to Defendant's motion for a judgment of acquittal as to Count One, the government argues that the following evidence supports Cross's conviction for conspiracy to interfere with interstate commerce by planning to steal cocaine from individuals believed by him to be drug traffickers: (1) Cross's presence at a meeting with Williams and Walden prior to the three men's arrest during the reverse sting; (2) Cross's arrival at the

---

1. The Court credits Defendant's counsel's representation that the reply in support of

Cross's motion was timely filed and shall consider the arguments contained therein.

scene of the reverse sting wearing a black ski mask; (3) the gun found next to Cross at the time of his arrest; (4) evidence that Walden knew that the purpose of the attempted robbery was to steal cocaine; (5) the conversation between Walden and the confidential informant prior to the robbery wherein Walden explained that he and his coconspirators planned to divide among themselves one half of the thirty kilograms of cocaine to be stolen; (6) Cross's prior conviction for delivering crack cocaine; and (7) Cross's statement to Espinosa following his arrest. Government's Memorandum in Opposition to Defendant's Motion for New Trial and Motion for Judgment of Acquittal Notwithstanding the Verdict, at 3–8. Having considered these points and drawing all inferences in the government's favor, the Court concludes that Cross's post-arrest statement is the only circumstantial evidence introduced at trial from which a reasonable jury could have found that Cross possessed the requisite intent to violate the Hobbs Act as charged in Count One.

The government's assertion that Cross was present at a meeting between Williams and Walden prior to the reverse sting and the government's implication that drugs were discussed at such a meeting are completely unsupported by the record. (Notably, the government does not refer to specific trial testimony or exhibits in order to prove its point.) To the contrary, Walden's trial testimony establishes that Walden met with the confidential informant on the day of the robbery in the parking lot of a hotel, and that this meeting took place while Walden and the informant were alone in a van and Cross and Williams were sitting apart in a car parked several parking spaces away. Transcript of Trial Testimony of Michael Walden, at 85. Furthermore, once Walden and the informant entered the car where Cross and Williams were waiting and the four men drove to the site of the robbery, no one in the car discussed the possibility that drugs would be stolen or any other aspect of the robbery; in fact, the only statement Walden heard Cross make during the entire ride was to thank Williams for earlier buying him food. *Id.* at 85–87. Walden also testified unequivocally that he did not discuss details of the robbery with Cross prior to the time that Cross, Walden and Williams arrived at the hotel parking lot. *Id.* at 93–94. Finally, and somewhat inexplicably, the government concedes elsewhere in its brief that the conversation between Walden and the informant in the hotel parking lot took place "outside of the presence of Williams and Cross." Government's Memorandum in Opposition to Defendant's Motion for New Trial and Motion for Judgment of Acquittal Notwithstanding the Verdict, at 4. There is therefore no evidence that Walden and Cross were present together at a meeting where drugs were discussed or that Walden communicated any information regarding drugs to Cross.

Next, the government asserts that "a reasonable jury could find that Cross had every intention of entering the place where the robbery was to take place by virtue of the fact that he was wearing a black ski mask to conceal his identity, and when arrested, was found with a Smith & Wesson revolver right next to his person." *Id.* at 3. This statement is accurate as far as it goes and these facts are undoubtedly circumstantial evidence of Cross's intent to commit a robbery. The government fails completely, however, to explain how these facts would lead a reasonable jury to conclude that Cross intended to steal narcotics, rather than money or valuables. In order to convict Cross of the crime

charged in Count One of the indictment, the government is obliged to prove beyond a reasonable doubt that Cross, in the words of *Thomas*, knew of the alleged conspiratorial goal, i.e. stealing cocaine. While the Eleventh Circuit has explained that, " 'because the crime of conspiracy is predominantly mental in composition, it is frequently necessary to resort to circumstantial evidence to prove its elements,' " *United States v. Garcia*, 405 F.3d at 1270 (quoting *United States v. Pineiro*, 389 F.3d 1359, 1369 (11th Cir.2004)), the court of appeals has also held that where, as here, the government's case for criminal conspiracy is based on circumstantial evidence, " 'reasonable inferences, and not mere speculation, must support the jury's verdict," ' *Charles*, 313 F.3d at 1284 (quoting *United States v. Perez–Tosta*, 36 F.3d 1552, 1557 (11th Cir.1994)). Viewing the evidence in the government's favor, the gun and the mask found on or near Cross at the time of his arrest lead logically to the conclusion that Cross intended to commit a robbery using the gun while at the same time concealing his identity. The government merely speculates, however, when it states that these items lead to the conclusion that Cross intended to steal cocaine rather than money or other valuables.

Next, the government asserts that "there was no dispute that the leader of the conspiracy, Michael Walden, knew that the object of the conspiracy was to steal cocaine." Government's Memorandum in Opposition to Defendant's Motion for New Trial and motion for Judgment of Acquittal Notwithstanding the Verdict, at 3. As with the government's earlier assertion, this statement is accurate but falls short of rebutting Cross's motion for a judgment of acquittal. Whether or not *Walden* intended to steal cocaine, the government now must show that a reasonable jury could have concluded from the evidence introduced at trial that *Cross* knew of the conspiratorial goal charged in the indictment, namely stealing cocaine through violence or the threat of violence.

To the extent that the government can be understood to argue that Walden's intent to steal cocaine can be imputed to Cross, this argument misapplies the principle that "[e]ach party to a continuing conspiracy may be vicariously liable for substantive criminal offenses committed by a co-conspirator during the course and in the furtherance of the conspiracy, notwithstanding the party's non-participation in the offenses or lack of knowledge thereof." *United States v. Silvestri*, 409 F.3d 1311, 1335 (11th Cir.2005) (emphasis omitted). This principle does not apply to Cross because the government is not charging him with criminal liability for the foreseeable substantive offense of a coconspirator under a theory of *Pinkerton* liability. Rather, the government has charged Cross with conspiracy to steal cocaine and now asks the Court to impute Walden's knowledge and intent to Cross in order to find Cross guilty of the criminal conspiracy. However the criminal law, without question and as explained in *Thomas*, bars the Court from transferring Walden's knowledge or intent vicariously to Cross under these circumstances. Having charged Cross with conspiring to steal cocaine, the government is obliged to prove each element of this crime beyond a reasonable doubt and must now point to evidence from which a reasonable jury could conclude that Cross himself intended to steal cocaine. The government has failed to explain the logical connection between Walden's knowledge of, or intent with regard to, the cocaine allegedly located by the informant and Cross's knowledge of, or

intent with regard to, this cocaine. To the extent that the government can be understood to argue that Walden communicated to Cross his knowledge of the cocaine to which the informant referred, this argument is contradicted completely by Walden's trial testimony. Walden made clear that he never spoke to Cross regarding the robbery prior to both men being arrested during the reverse sting. In either case, the government has failed to prove that Walden's intent to steal cocaine is evidence from which a reasonable jury could conclude that Cross intended to conspire with Walden to steal cocaine.

The government next argues that the substance of the conversation between Walden and the confidential informant in the parking lot of the hotel proves that Cross possessed the requisite intent to steal cocaine. With the emphasis added by the government, the pertinent portions of this conversation are as follow:

WALDEN: He says he wanted ten, right?

CI: Fifteen, fifteen, you get fifteen, I get fifteen.

WALDEN: Oh, I was gonna . . . .

CI: (unintelligible) it would be thirty, we're gonna to split it, right? You get fifteen, I we get fifteen.

WALDEN: Okay, that's . . . put it this way, if it's thirty, they get fifteen, I am saying, and we get fifteen.

. . . . .

WALDEN: This is, uh, uh, put its way, how many, how many did what's his name he wanted back? *How many bricks what's his name says he wants back?*

CI: Well, he told, he said we was gonna to split it.

WALDEN: Okay, and . . . .

CI: And when you, you, you was over there, he said he wants, he wants to split it.

WALDEN: Okay.

CI: He get fifteen, you get fifteen, he get fifteen, 'cause he's got to split it with (unintelligible), dawg.

WALDEN: Oh, okay, yeah, yeah, yeah . . . .

CI: You know what I am saying?

WALDEN: Yeah, yeah, yeah, so what, what . . . .

CI: He's gonna to take care of me.

WALDEN: He's saying he wants fifteen out of it.

CI: Yeah, it's thirty, you get fifteen, we get fifteen. You know what I'm saying? He's gonna pay me out of his. What, what, what you talking about?

WALDEN: No, see, I put it this way . . . .

(voices overlap)

CI: No, no, no, either way it goes . . . no, no, he, *I thought he was saying that he wanted, he wanted ten out of it, you know what I'm saying, and we would divide the rest of it, he said, he didn't give a fuck how we divided the rest of it up. 'Cause he said it was twenty-five or whatever, he said he wants ten and we'll divide the rest of it up. That's what I'm trying to say. 'Cause I* . . . .

CI: Is that what he told you?

WALDEN: Yeah, if I ain't mistaken, dawg, I could have sworn he said all he wanted was to give him his ten, he said, you all divide the rest of it up however it goes. No he saying he

wanted fifteen, you understand that's something new to me, I could have sworn I heard him say ten.

CI: I thought, I thought, I thought, I thought he, shit, divide that shit up. You get fifteen. Look, I know he's gonna, he's gonna. he's gonna (unintelligible) out of his, that's why (unintelligible) and you know what I'm saying, you break your own, you know what I'm saying?

WALDEN: I feel you.

CI: Yeah, dawg, that's what I'm trying to tell you, you break your own (unintelligible). You know what I mean, you know what I'm saying? I'm, I'm, I'm, I'm trying to get five. I'm trying to get five out of it. You know what I'm saying? and that ain't, see, 'cause you all, he's probably saying, he give me five, he's gonna give me five, that will leave him with ten. You know what I'm saying? So I ain't know if he told you something different when you all talked or whatever, whatever, you know what I'm saying?

WALDEN: I'm trying to think, but either way it goes, dawg, I got straight. I got, I got to let them know how this shit is.

CI: Come on dude.

WALDEN: No, I told (unintelligible), dawg. You, I . . . .

CI: *They know how much it is?*

WALDEN: *They think it's gonna be fifteen (unintelligible), you know what I'm saying, ain't no other choice.*

. . . . .

WALDEN: Either way, either way it goes, you know what I'm saying,

'cause me, me, me and him straight anyway, if, if we go in, oh, give me five, I'm sorry. Yo know what I'm saying?

CI: No, that's fine, that's fine. That's fine, (unintelligible).

WALDEN: *Five, five, five, five . . . .*

CI: Five, five . . . .

(voices overlapping, unintelligible conversation).

CI: If you all get twenty, you know what I'm saying, that shit is (unintelligible), you know what I'm saying? So you gonna get five, you know what I'm saying. You keep, that's that's ten (unintelligible) out of twenty. I need, I need five, I know he's gonna pay me five. I don't know. I'm gonna call him up, when he calls, he said he's gonna call me back with (unintelligible) and what's what, and I thought. I thought, you know what I'm saying, that you were gonna split it.

WALDEN: No, yeah, but he, if he, that's what I know, I could've sworn I heard him give me, all he wants is ten, he said this time (unintelligible), he said it's two grand for each one and you do ten and that right there, that adds up, all he said, all he wants is ten, you can take the (unintelligible).

. . . . .

CI: You know, (unintelligible) five and shit, you know what I'm saying? I don't, I won't I won't lie to you (unintelligible) . . . . You know what I'm saying? You know, you ain't, you know what I'm saying, whatever, whatever.

WALDEN: Either way it goes, you got to look at it, each one of us is taking a chance.

CI: Yeah, yeah, yeah, yeah, yeah . . . .

(voices overlap: conversation unintelligible)

WALDEN: *I can't tell those niggers I'm giving the niggers five for doing this right here, then I'm gonna take ten. I would, I wouldn't (unintelligible) like that.*

Based on the use of the singular and the fact that the informant claimed to have placed a phone call to this individual, the only reasonable interpretation of this transcript is that the "he" or "him" to which Walden and the informant refer in the first half of the conversation is Detective Peart, an undercover officer orchestrating the reverse sting. Standing alone. Walden's references elsewhere to "we," "they" or "those niggers" in the excerpts provided by the government are ambiguous and may or may not refer to Cross. Upon Cross's motion for a judgment of acquittal, the Court resolves this ambiguity in the government's favor and presumes that Walden was communicating to the informant that "they," i.e. Walden, Williams and Cross, would divide their share of the cocaine equally among themselves. The relevant question, however, is not whether Walden intended to share the cocaine with Cross, but whether Cross knew of Walden's intent to steal cocaine prior to Cross's arrest. Walden's testimony elsewhere makes clear that he never communicated any information regarding the post-robbery division of narcotics to Cross. Walden testified unequivocally that he had never spoken with or met Cross prior to the reverse sting on October 5, 2004, and testified that on October 5, 2004 he never discussed his plans for the robbery with Cross either en route to the hotel parking lot to meet with the informant or during the drive from the hotel parking lot to the location of the reverse sting. Trial Transcript of Michael Walden, at 83, 94. Because Walden testified clearly that he never communicated to Cross his plans regarding division of the cocaine, the fact that Walden claimed in a conversation with the informant to have planned the division of the narcotics among his coconspirators does not tend to prove that Cross knew that the purpose of the robbery was to steal cocaine.

Sixth, the government claims, without further explanation, that Cross's prior, unrelated conviction for dealing crack cocaine is evidence from which a reasonable jury could conclude that Cross conspired with the codefendants with the intent to steal cocaine since "[t]he jury could have found that because Cross had dealt in drugs before, crack cocaine specifically, that he knew that the object of this conspiracy was to steal cocaine, which he would then attempt to sell." Government's Memorandum in Opposition to Defendant's Motion for New Trial and Motion for Judgment of Acquittal Notwithstanding the Verdict, at 7. This argument can be fairly characterized only as speculation; the government points to no trial testimony or actual evidence that connects Cross's prior conviction with the instant conspiracy.

Finally, the government points to Cross's post-arrest statement to the effect that the arresting agents already knew what Cross intended to do at the time of his arrest. Consistent with its earlier arguments, the government does not argue that other district courts or courts of appeal have found such a statement to be sufficient evidence of a criminal defendant's intent or guilt under similar circumstances. Instead, the government asserts that, viewing this statement in the government's favor, a reasonable jury could con-

clude that the statement "showed that he knew the object of the conspiracy was to steal cocaine." While the government did not do so in its briefing, the Court reads Cross's statement as part of the larger conversation between Cross and Espinosa. In context, Cross responds to the statement that he is being charged with, among other crimes, conspiracy to commit armed drug trafficking by saying that, "you[, i.e. Espinosa.] already know what I was gonna go do." A reasonable jury could interpret this statement as an admission that Cross intended to commit the acts named by Espinosa, including conspiracy with others to steal cocaine by force. (A reasonable jury could also conclude that this statement was made sarcastically, but at this stage of the proceedings the Court, as she must, chooses the interpretation that favors the government.) This statement and response provide stronger evidence in favor of the conviction than the appellant's post-arrest statement in *Charles,* which was insufficient to support a finding that the appellant intended to commit the narcotics crime charged in the indictment. In that case, the court of appeals evaluated a convicted defendant's statement that he "was not sure" whether a targeted house contained cocaine and found that this statement, even interpreted to favor the conviction, amounted to "no evidence that [the defendant] knew the goal of the conspiracy was to steal narcotics." *Charles,* 313 F.3d at 1285 n. 6. The Court, not helped by Defendant's counsel in this regard, has researched the case law in this and other circuits and has been unable to find a case in which a post-arrest statement by a convicted defendant that could be interpreted so as to constitute an admission of guilt was insufficient evidence to support the conviction upon a motion for a judgment of acquittal. Under these cir-

cumstances, the Court finds that Cross's statement, interpreted so as to favor the conviction, amounts to evidence from which a reasonable jury could conclude that Cross intended to steal cocaine and was therefore guilty of the crime as charged in Count One.

In sum, the Court finds that the *only* evidence introduced at trial from which a reasonable jury could have found that Cross knew that the goal of the conspiracy was the robbery of cocaine, a requisite element of the offense charged in Count One, is Cross's post-arrest statement to Espinosa. With the exception of this statement, the evidence proffered by the government in response to Cross's motion for a judgment of acquittal is either irrelevant to the narrow question of Cross's intent-such as Walden's knowledge of the conspiracy's goals, the presence of the mask and gun and the fact of Cross's earlier conviction-or requires an interpretation that is foreclosed by the other evidence introduced at trial-as with Walden's meeting with the informant or the excerpts of their conversation coupled with the fact that Walden did not share these conversations with Cross. *Charles* makes clear that acquittal is appropriate where the government has failed to introduce at trial evidence from which a reasonable jury could conclude that an alleged conspirator possessed the requisite intent for conviction on a federal drug trafficking crime. Were it not for Cross's post-arrest statement, that would be the case here. However, having viewed this statement in the government's favor, the Court shall deny Cross's motion for a judgment of acquittal as to Count One because this statement tends to prove that Cross himself intended to steal cocaine as opposed to money or other valuables.

**B.** *Count Four*

██ Count Four charged Cross with conspiring to possess, use and carry a

firearm during and in relation to a crime of violence and a drug trafficking crime as charged in Count One in violation of 18 U.S.C. §§ 924(c)(1)(A) and 924(n). (In Count Four, Cross was indicted for similar firearms violations in connection with the crimes charged in Counts Two and Three, counts on which Cross was acquitted.) Section 924(c)(1)(A) provides:

Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime ... for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime -

(i) be sentenced to a term of imprisonment of not less than 5 years;

(ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years ....

In response to Cross's motion, the government points to the testimony of Officer Devito, who found a Smith & Wesson revolver lying next to Cross at the time of his arrest and who testified that the videotape of the reverse sting appeared to show Cross disposing of the revolver prior to his arrest. This argument misses the mark. From this evidence, a jury could have found Cross guilty of possessing a firearm during the commission of a crime, as charged in Count Five. The jury, however, acquitted Cross on this count. The relevant question is whether, viewing the evidence in the government's favor, a reasonable jury could have found Cross guilty of the crime charged in Count Four, which requires a finding that Cross conspired to carry a firearm in relation to any crime of violence or drug trafficking crime for which the person may be prosecuted in a court of the United States, in this case the Hobbs Act crime charged in Count One. The Court, for reasons set out in Part I.A, has already found that the evidence introduced at trial can support a finding that Cross entered into a conspiracy in violation of the Hobbs Act. Contrary to Cross's arguments on this point, the evidence is therefore adequate to support a finding that Cross committed one of the elements necessary to his conviction on Count Four. For this reason, the Court shall deny Cross's motion for a judgment of acquittal as to Count Four.

## II. *Defendant's motion for new trial*

A motion for new trial should be granted under Federal Rule of Criminal Procedure 33 where, in the Court's judgment, the evidence adduced at trial preponderates so heavily against the verdict that it would be a miscarriage of justice to let the verdict stand. *Butcher v. United States*, 368 F.3d 1290, 1296–97 (11th Cir.2004) (citing *United States v. Martinez*, 763 F.2d 1297, 1312 (11th Cir.1985)). Upon motions for a new trial, the Court is not obliged to draw all inferences in the government's favor and, short of setting aside the verdict simply because some other result would be more reasonable, the Court may weigh the evidence and consider the credibility of the witnesses called at trial. *Id.* at 1297. If the court concludes that, " 'despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury.' " *Mar-*

*tinez,* 763 F.2d at 1312 (quoting *United States v. Lincoln,* 630 F.2d 1313, 1319 (8th Cir.1980)).

 In this case, Cross does not point to, and the Court does not find, evidence proving affirmatively that he was unaware that the goal of the conspiracy was to steal cocaine. In that sense, Cross does not argue that proof of his innocence preponderates heavily against his conviction. Instead, Cross argues that the record contains such insufficient evidence of his knowledge of the alleged conspiratorial goal that the jury's verdict should be set aside and a new trial ordered as to Counts One and Four. In *Martinez* and the subsequent case of *United States v. Cox,* 995 F.2d 1041 (11th Cir.1993), the Eleventh Circuit explained the limited circumstances under which a trial court may order a new trial based on the insufficiency of the evidence introduced at trial notwithstanding a jury's guilty verdict.

In *Martinez,* the appellant was charged with three counts, conspiracy to possess and possession of cocaine, both with the intent to distribute, as well as importation of cocaine. 763 F.2d at 1301. At trial, the government introduced undisputed evidence that the appellant was the captain of a boat on which government agents found 454 pounds of cocaine, and that under questioning by law enforcement officials the appellant explained that the tanks in which the cocaine was hidden were holding tanks used to supply diesel fuel to the engine room. *Id.* at 1305–06. After the appellant was convicted of all three counts by a jury, the trial court then set this verdict aside and, without explanation, ordered a new trial. *Id.* at 1306–07. On appeal, the Eleventh Circuit held that motions for new trials based only on the trial court's weighing of the evidence upon which a jury has already found a defendant guilty are to be granted "sparingly and with caution, ... only in those really 'exceptional cases.'" *Id.* at 1313 (quoting *Lincoln,* 630 F.2d at 1319). The court of appeals then pointed to the undisputed facts of appellant's statement and his role as captain of the ship on which the drugs were found, and concluded that the jury's verdict should stand because the government's case "was not marked by uncertainties and discrepancies," "was not based on compound inferences," "was not presented through the testimony of impeached and suspect witnesses" and "was solid and consistent." *Id.*

In *Cox,* the appellant, a Georgia county sheriff, was charged with multiple counts of mail fraud; as explained by the court of appeals, the appellant's criminal scheme consisted of making personal credit card payments over a period of four years using checks drawn on a municipally-funded account of the county sheriff's office. *Cox,* 995 F.2d 1041. After a five-day jury trial, the appellant was convicted on twenty counts of wire fraud and then moved for a judgment of acquittal or, alternatively, for a new trial. *Id.* at 1043. The trial court denied the motion for a judgment of acquittal but granted a new trial based on its conclusion that, despite the jury's verdict, there was insufficient evidence of the appellant's intent to defraud the municipality. *Id.* The government appealed, and the court of appeals reversed the trial court's grant of a new trial. The court first discussed at length the applicable standard of review. While trial courts are normally granted discretion in deciding motions for a new trial, the Eleventh Circuit found, with emphasis added, that "the label 'abuse of discretion' belies the standard of review that we actually apply to *grants* of motions for a new trial." *Id.* at 1044.

Repeating *Martinez*'s formulation, the *Cox* court held that a trial court exceeds its authority in granting a new trial where "the evidence did not preponderate heavily against the jury's verdict." *Id.* Applying this standard to the appellant's case, the court of appeals found that his conviction for wire fraud was "fully support[ed]" by the evidence because the jury could have reasonably concluded that the appellant possessed the requisite fraudulent intent based on the undisputed, direct evidence that he floated the balance on his personal credit card for forty-eight months using a county checking account. *Id.* at 1044–46.

With these cases firmly in mind, the Court shall consider Cross's motion for a new trial as to Counts One and Four.[2] Several pieces of circumstantial evidence of Cross's participation in the reverse sting could lead reasonably to the conclusion that Cross conspired with his codefendants in order to commit an armed robbery. Only Cross's post-arrest statement, however, supports the conclusion that Cross possessed the intent necessary to be guilty of the specific federal crimes for which he was convicted-conspiracy to steal cocaine and conspiracy to possess and use a firearm in furtherance of the crime charged in Count One, whether it be a drug crime or a crime of violence. The government asks the Court to understand Cross's statement-"Why should I tell you anything if you already know what I was gonna go do?"-as an admission of guilt and to deny his motion for a new trial based on the sufficiency of this evidence. The Court, however, has considered this statement objectively and in context and finds that the more likely interpretation is that Cross was responding sarcastically or indignantly to Espinosa's questioning while communicating nothing about his knowledge of, or intent with regard to, the cocaine targeted by Walden. This interpretation is reinforced by Walden's repeated testimony that he and Cross never spoke about the robbery prior to their arrest, by the fact that the government did not introduce any other evidence tending to prove that Cross knew of the supposed presence of cocaine and by the fact that the jury found Cross not guilty of either conspiring or attempting to possess with intent to distribute five kilograms of cocaine. Indeed, Cross's acquittal on the drug charges and conviction on Counts One and Four suggests that the jury did not understand Cross's post-arrest statement to be an admission that he intended to steal cocaine specifically.

This case is unlike *Cox*, where the jury's finding of criminal intent was supported by the undisputed fact that the appellant engaged in a fraudulent scheme over four years-and, frankly, the undersigned does not find that *Cox* presented a close question. Nor is this case like *Martinez*, where the jury's finding that the appellant knew of the presence of drugs on the ship was supported by the appellant's role as captain of the vessel and his verbal identification of the tanks where the drugs were hidden. While Espinosa's testimony was

---

**2.** The verb "preponderate" is defined by the Oxford English Dictionary to mean "To weigh more; to be heavier; to incline the balance; to turn the scale." Not only must the evidence in this case preponderate against Cross's conviction, it must do so heavily in order for the Court to grant a new trial. Based on the single piece of ambiguous evidence proffered by the government in support of Cross's conviction, the complete absence of any other evidence tending to prove that he intended to steal cocaine and the jury's acquittal of Cross on the remaining drug charges, the Court concludes-for the first time in her judicial tenure-that this is an exceptional case where the evidence of guilt is so insufficient as to warrant a new trial notwithstanding the jury's verdict.

consistent and his credibility went largely unimpeached by the defense, the government's case regarding Cross's intent to steal cocaine was, to use *Martinez*'s words, based on uncertainties and compound inferences. While Walden made it clear that he did not speak to Cross about cocaine, the government leaves it completely uncertain as to how Cross may have otherwise come to known about the alleged conspiratorial goal. The government did not introduce any evidence of Cross's role in the conspiracy prior to his arriving on the scene of Walden's meeting with the informant prior to the reverse sting. Similarly, the government's characterization of Cross's post-arrest statement asks the Court to infer that Cross meant not only that he was admitting that he was about to commit an armed robbery, but that he was going to commit all of the crimes listed by Espinosa, including stealing cocaine.

The Court finds support for her conclusion that a new trial is warranted based on the materially similar case of *United States v. Robertson*, 110 F.3d 1113 (5th Cir.1997). In that case, a government informant approached one of the defendants, posing as an individual who could sell cocaine to this individual, and the two men agreed that the defendant would purchase four kilograms of cocaine. *Id.* at 1115. The two men met on June 22, 1992 in the presence of the appellant, and the three men were joined by a fourth. The four men then engaged in a conversation taped by the informant-as interpreted by the government, this conversation could be understood to implicate the appellant in the conspiracy while other, equally plausible interpretations would not have implicated the appellant. *Id.* Later that day, the appellant was twice observed at an interstate exit engaging in conversations with his coconspirators and watching for law enforcement. *Id.* at 1115–16 & n. 2. While the appellant was at the interstate exit, the defendant who made initial contact with the informant was arrested in a nearby hotel by government agents after producing the amount of money agreed upon for the cocaine. *Id.* at 1116. After this defendant was arrested, agents arrested the appellant near the interstate exit where he was waiting. *Id.* The appellant was visibly shaken after being informed of his co-defendant's arrest in the hotel room, but was himself released without arrest after the agents found no drugs, weapons or large amounts of cash in the appellant's vehicle or on his person. *Id.* The appellant and his alleged co-conspirators were later indicted by a federal grand jury for conspiracy to possess cocaine with intent to distribute. *Id.* At trial, the appellant asserted an affirmative defense of innocent presence but was convicted by the jury. *Id.* The trial court initially denied the appellant's motion for a new trial, but at sentencing reopened the issue because, in the court's words, "the case against … [the appellant] was weaker than that against the other three defendants." *Id.* at 1116 & n. 4. After oral argument regarding the appellant's motion for a new trial, the court granted the motion and ordered a new trial based on the insufficiency of the evidence of the appellant's guilt. *Id.* at 1116. After considering the evidence to which the government pointed in support of the jury's verdict, the trial court found that the appellant's actions

> were certainly suspicious. He appeared at the locations. His name was mentioned. But the appearance of suspicion is not enough. The test here is whether there has been satisfaction of the standard of proof beyond a reasonable doubt. And the Court here simply can-

not say that that standard here has been reached with regard to the evidence and under the standard of conspiracy in this case.

Therefore, the Court is going to grant the motion for a new trial.

*Id.* at 1118 n. 10. The trial court then stayed the new trial pending the government's appeal. *Id.* at 1116.

On appeal, the Fifth Circuit analyzed the trial court's decision under a standard of "clear abuse of discretion," drawing this standard in part from the Eleventh Circuit's decision in *Martinez. Id.* at 1118. Specifically, the *Robertson* court asked whether the evidence did, in fact, "preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *Id.* The court of appeals then considered the four pieces of evidence supporting the appellant's conviction: (1) his presence at a meeting with members of the drug conspiracy; (2) the mention of his name in a recorded conversation that could be interpreted to mean that appellant was involved with the conspiracy; (3) his presence with members of the conspiracy at the interstate exit; and (4) his repeated presence at this exit and the signs of nervousness he showed when arrested by government agents. *Id.* at 1119. Based on this evidence of guilt, the court of appeals found that the trial court was within its discretion to order a new trial because "the government's most potent evidence of guilt was severely lacking and … a miscarriage of justice would result if the verdict stood, [and] the evidence preponderated heavily against the verdict." *Id.* at 1120.

In this case, as in *Robertson,* the government's evidence is similarly lacking and a miscarriage of justice would result if the jury's verdict were allowed to stand with-out greater evidence of Cross's intent to steal cocaine. While Cross, unlike the appellant in *Robertson,* was found near a firearm and in possession of a mask, the government bears the burden of proving him guilty of a conspiracy to steal cocaine as charged in the indictment. In the face of the jury's verdict acquitting Cross of the drug charges and the absence of any other evidence connecting Cross to the cocaine described to Walden by the informant, Cross's post-arrest statement is insufficient evidence from which to conclude beyond a reasonable doubt that Cross intended to steal cocaine, as charged. Denying Cross's motion for a new trial under these circumstances is necessary because, in the words of the Second Circuit, "I [am not] satisfied that competent, satisfactory and sufficient evidence in this record supports the jury's finding that this defendant is guilty beyond a reasonable doubt [of the federal crimes charged in Counts One and Four.]" *United States v. Sanchez,* 969 F.2d 1409, 1414 (2d Cir.1992). A new trial is required so that the government may, if it chooses, present clearer or more compelling evidence that Cross was guilty of the all the necessary elements of each crime for which he was convicted.

### Conclusion

For the above reasons, it is hereby

ORDERED AND ADJUDGED that Defendant Torie Cross's Motion to Accept Reply as Timely Filed is GRANTED. It is further

ORDERED AND ADJUDGED that Defendant Torie Cross's Renewed Motion for Judgment of Acquittal is DENIED, and Defendant's Motion for a New Trial is GRANTED as to Counts One and Four of the indictment.